2008 OK CIV APP 15

**In the Matter of J.S. and M.C., deprived children under the age of 18 years,**

**Robin Stephens, a/k/a Robin Cobb, Appellant,**

v.

**The State of Oklahoma, Appellee.**

**No. 104,648.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 10, 2008.

David C. Morse, Jenks, OK, for Appellant.

Tim Harris, District Attorney, Robert J. Sher, Assistant District Attorney, Tulsa, OK, for Appellee.

OPINION

ADAMS, Presiding Judge.

¶ 1 Robin Cobb a/k/a Robin Stephens (Mother) appeals a trial court order terminating her parental rights to the minor Indian children who are the subjects of this action, J.S. and M.C. The termination order was based on Mother's failure to correct the conditions which led to the children's deprived adjudication and their placement in foster care with the Department of Human Services (DHS) for 15 of the most recent 22 months preceding the filing of the petition to terminate by the State of Oklahoma (State).[1] For reversal of the order, Mother argues, *inter alia*, that the trial court improperly evaluated the evidence presented by the State to support the trial court's determination that "active efforts" were made to provide remedial services and rehabilitative programs designed to prevent the break up of the Indian family but were unsuccessful. We agree and reverse the order.

¶ 2 Before addressing Mother's principle argument, we must address her argument that the State did not prove *beyond a reasonable doubt* that active efforts were made to reunite Mother and her children, which she contends is mandated by § 1912(d) of the federal Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, *et seq.* Section 1912(d) of ICWA provides that:

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law *shall satisfy* the court that *active efforts* have been made *to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.* (Emphasis added.)

1. In its order the trial court found that State "met its burden of proof and demonstrated by *clear and convincing evidence*" that the parental rights of Mother should be terminated pursuant to 10 O.S.2001 § 7006–1.1(A)(5) and (A)(15). (Emphasis added.)

¶ 3 The applicability of ICWA is undisputed in this case. When ICWA applies, the Oklahoma Indian Child Welfare Act, 10 O.S.2001 § 40.1, *et seq.* (OICWA), also applies. *See Matter of the Adoption of D.M.J.*, 1985 OK 92, 741 P.2d 1386.[2] It is the policy of the State of Oklahoma through OICWA to "ensure that the intent and provisions of the federal [ICWA] are enforced." 10 O.S.2001 § 40.1. Compliance with ICWA is required in all state voluntary and involuntary child custody court proceedings involving Indian children, except those arising from marriage dissolution proceedings or delinquency adjudications. 10 O.S.2001 § 40.3(B); *Cherokee Nation v. Nomura*, 2007 OK 40, 160 P.3d 967.

¶ 4 Mother specifically argues that "Due Process and statutory interpretation require that the state prove *beyond a reasonable doubt* that active efforts have been made before [her] rights can be properly terminated." (Emphasis added.) State correctly points out that Mother's argument is an incorrect statement of law under present Oklahoma case law. That heightened standard of proof, which is absent from the language of § 1912(d), applies *only* to the factual determination required by 25 U.S.C. § 1912(f) to be made in ICWA termination cases, *i.e.*, "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child," whereas the lesser standard of "clear and convincing" evidence, the state-law mandated burden of proof, is applicable to all other state law requirements for termination. *In re Adoption of R.L.A.*, 2006 OK CIV APP 138, 147 P.3d 306.

¶ 5 Section 1912(d)'s "active efforts" requirement, for which the State has the burden of proof, is a *predicate* finding of the trial court made *before* a termination case may proceed. The meaning of "active efforts," a process of statutory interpretation and determination of the appropriate burden

2. This case was overruled by *In the Matter of Baby Boy L.*, 2004 OK 93, 103 P.3d 1099, to the extent it applied the so-called "existing Indian family" exception to the application of ICWA. The principle for which it is cited here is unaffected by that decision.

of proof for that finding are legal rulings. As with any other legal rulings which are reviewed *de novo,* this review requires an independent, non-deferential re-examination of those rulings. *See In re A.M. & R.W.,* 2000 OK 82, 13 P.3d 484.

█ ¶ 6 The trial court identified the predicate issue as "has *reasonable efforts ... or* has *active efforts* been made beyond a reasonable doubt," and after some discussion, the trial court stated "[i]t appears to me that *active efforts* have been made *beyond a reasonable doubt."* (Emphasis added.) Because the trial court actually placed the heightened burden of proof on the State on the issue of "active efforts," such error is harmless because it benefitted Mother. *Newton v. Paul,* 1950 OK 279, 203 Okla. 556, 224 P.2d 265.

¶ 7 As noted by Mother regarding § 1912(d)'s application in Oklahoma, "[t]here is no precise definition for what constitutes 'active efforts,' and it should be determined by the court on a case by case basis." This is the approach counseled by the Oklahoma Supreme Court Committee's Introductory Note of Ch. 5, "Indian Child Welfare Act," within *In re Oklahoma Uniform Jury Instructions for Juvenile Cases,* 2005 OK 12, 116 P.3d 119.

¶ 8 Mother also argues, relying on *A.A. v. State of Alaska, Department of Family & Youth Services,* 982 P.2d 256 (Alaska, 1999), that there is a difference between "passive efforts" and "active efforts." According to her argument, "active efforts" require *affirmative* help from the State for developing

job and parenting skills to retain custody and locating financial assistance, instead of only "passive efforts," *i.e.,* requiring the Individualized Service Plan (ISP) be performed by exclusive efforts of the parent. In that case, the Alaska Supreme Court, after considering its prior opinions approving the distinction between active and passive efforts and recognizing that there is "no pat formula" for distinguishing those efforts, 982 P.2d at 261, terminated a father's parental rights in spite of the State's "relatively passive" efforts, 982 P.2d at 262, concluding his unwillingness to participate in treatment while in prison and his lengthy sentence had justified the level of remedial services the State provided, and therefore it had fulfilled its duty under ICWA to make active efforts.

¶ 9 Mother, although acknowledging witness testimony that "active efforts" were performed in her case, contends that alone does not necessarily prove such efforts were made, especially considering the DHS worker's admissions that (1) what she did was not different than what she did in every case and that (2) the only difference between "reasonable efforts" and "active efforts" to reunite is whether Mother was provided with transportation.[3]

¶ 10 Section 1912(d)'s phrase, "active efforts," is neither defined in ICWA nor OICWA. When determining the meaning of a federal statute, we must start with the general assumption that "in the absence of a plain indication to the contrary, ... Congress when it enacts a statute is not making the application of the federal act dependent on

---

**3.** As this testimony suggests, there is a different "efforts" standard for non-ICWA cases. Our statutes require judicial findings regarding whether "reasonable efforts" have been exercised by DHS to provide for the safe return of children to their own home in all voluntary and involuntary child custody court proceedings brought under the Oklahoma Children's Code, 10 O.S.2001 § 7001–1.1, *et seq. See* 10 O.S. Supp. 2004 § 7003–5.6(F)(2)(a). When used in the Oklahoma Children's Code, "Reasonable efforts" means:

the reasonable exercise of diligence and care, with regard to a child who is in out-of-home placement, or who is at imminent risk of being harmed, to:
a. refer to, arrange for, or develop reasonable supportive and rehabilitative services for the

family of such child that are required both to prevent unnecessary placement of the child outside of the child's home and to foster, whenever appropriate, the safe reunification of such child with the child's family, or
b. place a child who cannot be returned home into a permanent placement;
10 O.S.2001 § 7001–1.3(44). Our search of the record reveals that the "OK DHS RECOMMENDATIONS" on the second page of Mother's first ISP progress report, dated January 24, 2006, noted *only* that "REASONABLE EFFORTS MADE TO REUNITE," and that it was not until the April 27, 2006 ISP Progress Report, *eight months after the children were removed from their home,* that DHS therein noted that "Active Efforts Made to Reunite–ICWA."

state law." *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43, 109 S.Ct. 1597, 1606, 104 L.Ed.2d 29 (1989). Moreover, according to *Holyfield,* one reason for doing so is that federal statutes are generally intended to have uniform nationwide application. The Oklahoma Supreme Court recently recognized that ICWA "showed Congressional intent to achieve *uniformity* among the states where the interests of Indian children, parents and tribes are concerned." *Cherokee Nation v. Nomura,* 2007 OK 40, ¶ 20, 160 P.3d at 975. (Emphasis added.)

■■■ ¶ 11 In the absence of a statutory definition, the legislative purpose is expressed by the ordinary meaning of the words used in light of the object and policy of the statute. *See Holyfield.* When interpreting legislation, we must not be guided by a single sentence or member of a sentence but look to the provisions of the whole act in light of its object and policy. *Richards v. U.S.,* 369 U.S. 1, 82 S.Ct 585, 7 L.Ed.2d 492 (1962).

¶ 12 *Matter of Adoption of Baby Boy D.,* 1985 OK 93, ¶¶ 19–20, 742 P.2d 1059, 1063 [4] (overruled on other grounds), concluded the congressional purpose in passing ICWA was

[T]o protect the best interest of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture. . . .

The central thrust and concern of the ICWA is, therefore, "the establishment of minimum federal standards for the removal of Indian children from their families." (Footnote omitted.)

We must apply these principles in determining whether the State's efforts in this case qualify as "active."

■■■ ¶ 13 Used in § 1912(d) as an adjective modifying "effort," the common and ordinary meaning of "active" means "characterized by action rather than contemplation or speculation" or "participating," *Webster Third New International Dictionary* 22 (1986), and "causing action or change," "effective," or "active efforts for improvement," *The American Heritage Dictionary* 7 (1986). As the Alaska Supreme Court in *A.A. v. State of Alaska* recognized, the opposite or antonym of "active" is "passive." *See The New Webster Encyclopedic Dictionary of the English Language* (1980).

¶ 14 Our research reveals only two states which have concluded that ICWA's "active efforts" requirement is *equivalent* to the state's "reasonable efforts" to provide reunification services in a non-ICWA cases. *See People ex rel. K.D.,* 155 P.3d 634 (Colo.App. 2007), and *In re Adoption of Hannah S.,* 142 Cal.App.4th 988, 48 Cal.Rptr.3d 605 (2006). Consistent with *A.A. v. State of Alaska,* "the majority of courts that have considered the 'active efforts' requirement . . . have determined that it sets a *higher standard* for social services departments than the 'reasonable efforts' required by state statutes." (Emphasis added.) *In re Nicole B. and Max B.,* 175 Md.App. 450, 471, 927 A.2d 1194, 1206 (2007).[5]

¶ 15 Considering the plain language of § 1912(d) and the policy behind ICWA, especially Congress' intent to achieve uniformity among the states where the interests of Indian children, parents and tribes are concerned, we decline to follow the minority and instead join the majority of other states' courts [6] which have interpreted ICWA and held that the "active efforts" standard re-

---

**4.** This opinion also applied the "existing Indian family" exception to ICWA and was overruled on that basis by *In the Matter of Baby Boy L.,* 2004 OK 93, 103 P.3d 1099, without vitiating the principle for which we cite this case.

**5.** As of November 7, 2007, the highest court in Maryland granted certiorari review for *In re Nicole B. and Max B.*

**6.** See *South Dakota ex rel. J.S.B., Jr.,* 691 N.W.2d 611 (S.D., 2005), *In re Welfare of Children of S.W.,* 727 N.W.2d 144 (Minn.App., 2007); *Winston J. v. State of Alaska, Department of Health and Social Services, Office of Children's Services,* 134 P.3d 343 (Alaska, 2006); *In re Interest of Dakota L.,* 14 Neb.App. 559, 712 N.W.2d 583 (2006), and *In re A.N.,* 325 Mont. 379, 106 P.3d 556 (2005).

quires more effort than the "reasonable effort" standard in non-ICWA cases.

¶16 In this case, the trial court's interpretation of what constitutes "active efforts" is revealed in its ruling at trial:

> It was in an effort of all parties to be part of the process to do active efforts. And in a case like this, it's not the old saying that 'You can lead a horse to water, but you can't make him drink.' *Well, we're not even here to lead the parent to the water. It's we point in the direction and leave it up to the drive, the determination and what should be the actions of the parents* to demonstrate their care and concern for their children.

This interpretation is contrary to the plain and ordinary language in § 1912(d) and thereby undermines congressional policy. To use the trial court's metaphor, "active efforts" requires "leading the horse to water."

¶17 The distinction is significant because of evidence that one of the major obstacles to Mother completing her "service plan" was her inability to pay for a required psychological evaluation. Through her own efforts, Mother eventually obtained the evaluation several months after the dispositional order through a program at the tribal health facility. There is little, if any, evidence that the State or tribal workers made any effort to identify resources which might assist Mother.[7]

¶18 Because the trial court applied an incorrect definition of "active efforts" in making the finding, we must reverse the order terminating Mother's parental rights and re-

mand the case for reconsideration of that finding by the trial court in light of the views expressed in this opinion.[8]

**REVERSED AND REMANDED WITH INSTRUCTIONS**

HANSEN, J., and JOPLIN, J., concur.

---

**7.** Despite having concluded Mother was indigent, the trial court considered its suspension of child support ($50 per month) as "active efforts" to assist Mother in paying for the psychological evaluation. However, there is no indication in this record that Mother had been paying child support so that the suspension of this obligation actually increased Mother's available funds.

**8.** Because we reverse the order based on a legal error in this predicate finding, it would be premature to address Mother's argument that selective enforcement of 10 O.S.2001 § 7006-1.1(A)(15) violates her right to due process. we also note that the appealed order does not comply with Rule 8.2, Rules of the District Court, because it lacks a finding of compliance with

ICWA and does not include the full names and birth dates of the children. *See In the Matter of M.D.R.,* 2002 OK CIV APP 75, 50 P.3d 1160. It also lacks the determination required by § 1912(f) that "continued custody of the children by the parents is likely to result in serious emotional or physical damage to the children." Such a finding must be supported "by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses." If on remand the trial court determines clear and convincing evidence supports the conclusion that the State used "active" efforts to prevent the breakup of this family, any subsequent termination order should correct these deficiencies.