2009 OK CIV APP 80

**In the Matter of B.B.A., Minor Child.**

**Cherokee Nation, Appellant,**

v.

**L.S. and E.W. and Christina A., Appellees.**

**No. 106,242.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 11, 2009.

---

Sara E. Hill, Tahlequah, OK, for Appellant.

M. Eileen Echols, David W. Echols, Amy L. Howe, Lindsey W. Andrews, Jonahan D. Echols, Echols and Associates, Oklahoma City, OK, for Appellees, Adoptive Parents.

ROBERT DICK BELL, Presiding Judge.

¶ 1 Appellant, Cherokee Nation, appeals the district court's final decree of adoption of an Indian child in favor of a non-Indian family. The district court found the biological parents' unified voice concerning the placement and adoption of their Indian child with the non-Indian family was sufficient good cause to deviate from the preference requirements of the Indian Child Welfare Act (ICWA), 25 U.S.C. § 1901, *et seq.*, and the Oklahoma Indian Child Welfare Act (OICWA), 10 O.S.2001 § 40.6. Finding no abuse of discretion, we affirm.

¶ 2 B.B.A., the minor child, was born April 11, 2006. Appellee, Christina A. (Mother), is the natural mother of Minor Child. Immediately following the child's birth, Adoptive Parents, who are non-Indian and non-relatives, obtained physical custody of the child with the knowledge and consent of Mother. Mother made the initial placement decision before she knew the child was an Indian child. Adoptive Parents filed their petition for adoption along with an application to terminate the biological father's parental rights. The person identified as the biological father (Father) was provided notice of the proceeding. A DNA test confirmed Father's paternity. Father entered his appearance and asserted his consent to the adoption was necessary. He also claimed he was a member of the Cherokee Nation.

¶ 3 The court found the minor child was an "Indian Child" as defined by 25 U.S.C. § 1903(4) and Adoptive Parents provided notice of the adoption proceeding to the Cherokee Nation. Over the Adoptive Parents' objection, the Cherokee Nation was permitted to intervene in the proceeding. Thereafter, Father appeared in court and testified he was relinquishing his parental rights and consenting to the adoption. The Cherokee Nation set the matter for a good cause hearing as to placement of the minor child. The Cherokee Nation objected to the placement of the Minor Child with Adoptive Parents asserting the statutory placement preferences of 25 U.S.C.A. § 1915 and 10 O.S.2001 § 40.6 should prevail. At the conclusion of the good cause hearing, the district court overruled the Cherokee Nation's objection. In its supplemental order, the district court determined that absent a showing of harm to the child, good cause was presumed by the biological parents' unified voice concerning the child's placement. The court also found the child's best interests would be served by placing the child with Adoptive Parents.

¶ 4 The Cherokee Nation filed an appeal of the district court's good cause determination with the Oklahoma Supreme Court. The appeal was dismissed as premature and mandated. In the meantime, Father revoked the voluntary relinquishment of his parental rights and consent to adoption. Adoptive Parents again sought termination of Father's parental rights and the matter was set for trial. Later, Father voluntarily stipulated to the application to determine the minor child eligible for adoption without his consent and to terminate his parental rights. The Final Decree of Adoption was entered on July 29, 2008. The decree specifically found Father voiced his preference that the child be placed with and adopted by Adoptive Parents, and that such placement and adoption was in the child's best interests. The Cherokee Nation now appeals from that decree.

## STANDARD OF REVIEW

■ ¶5 We first address the applicable standard in reviewing a district court's determination that good cause exists to deviate from the ICWA's and OICWA's placement preferences. Cherokee Nation suggests Oklahoma case law supports the "clear and convincing" standard of evidence. *See In re Adoption of Baby Girl B.*, 2003 OK CIV APP 24, ¶77, 67 P.3d 359, 373. Whereas, Adoptive Parents urge the "abuse of discretion" standard of review should be employed. The introductory language to the Bureau of Indian Affairs (BIA) Guidelines for State Courts; Indian Child Custody Proceedings (Guideline), 44 Fed.Reg. 67,584 (Nov.1979)[1], state that "use of the term 'good cause' was designed to provide state courts with flexibility in determining the disposition of a placement proceeding...." In view of this language and the trial court's role as factfinder, we hold the trial court's determination of good cause should be reviewed for an abuse of discretion. *See In re Adoption of B.G.J.*, 281 Kan. 552, 133 P.3d 1, 9 (Kan.2006); *In re Adoption of Sara J.*, 123 P.3d 1017, 1021 (Alaska 2005); *Matter of Baby Boy Doe*, 127 Idaho 452, 461, 902 P.2d 477, 486 (Idaho 1995); and *Matter of Adoption of M.*, 66 Wash.App. 475, 483, 832 P.2d 518, 522–23 (Wash.App.1992) (The ICWA "vests the trial court with ample discretion to allow the child to remain permanently in the home selected by both natural parents and in which she has lived since birth. Exercise of that discretion, however, must be based upon a finding of good cause for non-preferential placement pursuant to 25 U.S.C. § 1915(a).")

¶6 In this regard, we distinguish *In re Adoption of Baby Girl B.* That case involved a default judgment terminating a non-consenting biological father's parental rights to his Indian child. Because it was an involuntary proceeding and the biological parents' preferences were not unified, that court applied the "clear and convincing" standard of evidence to determine whether "good cause" was established to disregard the statutory pre-adoption placement preferences. This case does not warrant the application of the heightened standard of review.

## ANALYSIS AND DISCUSSION

■ ¶7 Cherokee Nation's first assignment of error reiterates the history, policy and purpose of the ICWA and the OICWA. No substantive arguments are advanced in this assignment of error. For its second assignment of error, Cherokee Nation argues the District court erred in finding the biological parents' preference to place their child with Adoptive Parents was sufficient to constitute good cause to deviate from the statutory placement preferences. Cherokee Nation urges the evidence of this one factor, standing alone, was insufficient to satisfy the multifaceted factors for determining good cause under 25 U.S.C. § 1915(a) and 10 O.S. 2001 § 40.6. Section 1915(a) provides in part:

> In any adoptive placement of an Indian child under State law, a preference shall be given, *in the absence of good cause to the contrary*, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families ... (emphasis added).

Section 1915(c) provides: "Where appropriate, the preference of the Indian child or parent shall be considered...." Section 40.6 of the OICWA, which compliments the ICWA, provides in part:

> The placement preferences specified in 25 U.S.C. Section 1915, shall apply to all preadjudicatory placements, as well as preadoptive, adoptive and foster care placements. In all placements of an Indian child by the Oklahoma Department of Human Services (DHS), or by any person or other placement agency, DHS, the person or placement agency shall utilize to the maximum extent possible the services of the Indian tribe of the child in securing placement consistent with the provisions of the Oklahoma Indian Child Welfare Act.

¶8 According to BIA Guideline F.3(b), a party asking a court to deviate from the

---

**1.** The Guidelines provide persuasive guidance and are not intended to have binding legislative effect. *See* Introduction to Guidelines.

order of preference has the burden of establishing the existence of good cause to justify the deviation. BIA Guideline F.3(a) provides:

> For purposes of foster care, preadoptive or adoptive placement, a determination of good cause not to follow the order of preference ... shall be based on *one or more* of the following considerations:
>
> (i) The request of the biological parents or the child when the child is of sufficient age.

(emphasis added). The persuasive language of the Guidelines authorizes reliance upon only one factor to establish the existence of good cause.

¶ 9 In *Cherokee Nation v. Nomura*, 2007 OK 40, 160 P.3d 967, the Oklahoma Supreme Court reiterated the placement preferences for Indian children are subject to a "good cause" exception set forth in § 40.6 and § 1915. Although "good cause" is not statutorily defined, *Nomura* noted at least one court has held the birth parent's preference for placement with a non-Indian adoptive family may be sufficient to invoke the "good cause" exception. *Nomura* at ¶ 30 n. 20, 160 P.3d at 977, *citing In re Adoption of B.G.J., supra.*

¶ 10 Another consideration for determining good cause to deviate from the statutory order of preferences is the best interests of the child. *Matter of N.L.*, 1988 OK 39, 754 P.2d 863. *Nomura* noted the length of time a child has been in the Adoptive Parents' home may be a significant factor entitled to great weight in determining a child's best interests in an adoption proceeding. *See* 10 O.S. Supp. 2005 § 7003–5.6h(B) and (C). These subsections provide, in part:

> B. If the child has resided with a foster parent for at least one (1) year, the court shall give great weight to the foster parent in the adoption consideration for the child unless there is an existing loving emotional bond with a relative of the child by blood or marriage who is willing, able and eligible to adopt the child.
>
> C. In making such determination, the court shall consider whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the

foster family is able and willing permanently to treat the child as a member of the family. The court shall consider, without limitation:

> 1. The love, affection, and other emotional ties existing between the child and the relatives of the child, and the child's ties with the foster family.

¶ 11 Here, the uncontradicted evidence demonstrated both biological parents' expressed their unified voice to place the child with Adoptive Parents. It was also uncontradicted that the child has resided with Adoptive Parents since his birth and that he has been a part of that family for over two (2) years. Expert witnesses opined the child has bonded with Adoptive Parents and that a change in the child's placement could cause psychological and emotional harm. Considering the length of time this child has been an integral part of this family and that his removal from the only parents he has ever known would not be in his best interest, we find the district court did not abuse its discretion when it determined good cause to deviate from the order of preferences.

¶ 12 The Cherokee Nation also claims the district court's order and decree should be reversed because the tribe was deprived of full judicial review of its objections. Specifically, Cherokee Nation asserts it was prevented from presenting evidence at the good cause hearing regarding the parties' failure to use the tribe's placement resources and approved adoptive homes. This contention lacks merit. According to the appellate record, the Cherokee Nation was permitted to present argument and authority supporting its position that the biological parents' unified voice was insufficient to establish good cause to deviate from the statutory order of preferences. When the district court determined the cases cited by the Cherokee Nation were inapplicable and ruled contrary to Cherokee Nation's position, Cherokee Nation had another opportunity to state its objections in a motion to reconsider. According to the record, the district court did not dismiss the importance of Cherokee Nation's contentions. Instead, the district court issued an extensive supplemental order explaining the basis for its decision. Such proceedings in

the record belie Cherokee Nation's contention that it was denied ample and full opportunity to protect the best interests of this Indian child.

¶ 13 For its final assignment of error, Cherokee Nation asserts the district court erroneously permitted the biological parents to unilaterally waive application of the statutory order of preferences. This claim intimates the district court ignored the application of the ICWA and the OICWA. As explained above, this assertion is not supported by the record. Instead, the record shows the district court went to great effort to properly document the legal and factual reasons for its good cause determination.

¶ 14 We cannot find the district court abused its discretion when it determined good cause existed to deviate from the statutory adoptive order of preferences and that the child's best interests would be served by entering the final decree of adoption. Accordingly, the district court's decree of adoption is affirmed.

¶ 15 AFFIRMED.

BUETTNER, J., and HANSEN, J. (sitting by designation), concur.