2001 OK CIV APP 66

**Thomas G. WILKERSON and Howard Mitchell, Plaintiffs/Appellants,**

**v.**

**The CITY OF PAULS VALLEY, Oklahoma, Defendant/Appellee.**

**No. 94,812.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 13, 2001.

Certiorari Denied May 1, 2001.

John Sprowls, John Sprowls Law Office, Pauls Valley, OK, for Plaintiffs/Appellants.

James W. Carlton, Jr., Garvin, Agee, Carlton & Mashburn, L.L.P., Pauls Valley, OK, for Defendant/Appellee.

RAPP, Judge:

¶1 The trial court plaintiffs, Thomas G. Wilkerson and Howard Mitchell (WILKERSON), appeal the decision of the trial court in favor of the trial court defendant. The City of Pauls Valley, Oklahoma (CITY), rendered in an appeal from a decision of the Pauls Valley Planning & Zoning Commission (COMMISSION) that denied Wilkerson permission for new mobile home placements, or,

alternatively, a variance from the Pauls Valley Flood Prevention Ordinance (ORDINANCES).

## BACKGROUND

¶ 2 The parties presented the case before the trial court with stipulated facts, and, thus, only a limited recital of the facts is necessary. Wilkerson has leased a tract of land upon which he operates a mobile home park that is located in a floodplain area. In order to comply with a Federal program providing for flood insurance, City was obliged to adopt and enforce flood prevention ordinances and floodplain mapping.

¶ 3 City enacted the Ordinances. The parties agree that the mobile home park was in place prior to the enactment of the Ordinances and that the mobile home park is a non-conforming use under these Ordinances, as well as subject to flooding. Moreover, Wilkerson has continued to operate the mobile home park since the Ordinances were adopted.

¶ 4 City notified Wilkerson that the property was designated as situated in a "floodway" and not in compliance with elevation restrictions. Under the Ordinances, "floodways" are designated as areas of "special flood hazard" and the Ordinance prohibits new construction or placement of structures in the "floodway" area. The City advised Wilkerson that it would deny further utility hook-ups for all new or additional mobile homes seeking to locate in the mobile home park, until compliance with the Ordinances. The City also provided Wilkerson elevation and other restrictions that would apply in order to achieve compliance.

¶ 5 In September 1996, Wilkerson applied for a conditional-use permit for the placement of additional homes, which was denied, and a variance, which also was denied. Wilkerson appealed to the District Court, which also denied relief. Wilkerson now appeals.

¶ 6 Wilkerson maintains that the trial court erred because placement of additional mobile homes on existing lots, or replacement of mobile homes on existing lots, is consistent with Wilkerson's uses of the property prior to the enactment of the Ordinances, and that

to deny such uses violates the grandfather clause of the statute, 82 O.S.1991, § 1613, and the Oklahoma Constitution, Article 5, Sections 52 and 54.

¶ 7 The City argued that only those mobile home structures in place when the Ordinances were enacted may remain, but that, as they were removed and replaced or as new mobile homes were brought in, such would have to comply with the Ordinances. In addition, the City asserted that if it did not enforce these Ordinances then it was in jeopardy of losing eligibility to participate in the Federal Flood Insurance Program, thus losing flood insurance for the City's residents. The City's position in short is that once a pre-existing mobile home leaves the mobile home park pad it cannot be replaced nor can new mobile homes be brought into the mobile home park, otherwise the nonconforming use would be perpetuated.

¶ 8 Wilkerson further argued that the evidence justified granting a variance. The City responded that not only would a variance perpetuate the nonconforming uses, but also that the Ordinances here are designed to protect against an admitted flooding hazard to life and property. The City also pointed to the possibility of loss of eligibility for Federal Flood Insurance and the attendant consequences.

## STANDARD OF REVIEW

¶ 9 Where the facts are not disputed an appeal presents only a question of law. *Baptist Building Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, n. 1. If an appeal asserts a violation of constitutional rights, the appellate court will exercise its own independent judgment, if it becomes necessary to determine the constitutional question. *Ranola Oil Co. v. Corporation Commission of Oklahoma*, 1988 OK 28, 752 P.2d 1116. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's

ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328.

■ ¶ 10 In denial of a variance, the exercise of equitable principles are involved by both the governing body and the trial court. This involves a question of whether there exists an abuse of discretion by the denial, and the decision must be against the evidence, and reason and result in a clearly erroneous conclusion. *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, ¶ 32, 932 P.2d 1091, 1097.

## ANALYSIS AND REVIEW

### *Whether Wilkerson's Use Constitutes a Continued Use*

■ ¶ 11 There can be no serious argument over whether City's Ordinances here prohibit Wilkerson from adding new mobile homes or replacing mobile homes that have moved. The question is whether these Ordinances may thereby validly restrict Wilkerson in his usage of the leasehold as a mobile home park prior to their enactment.

¶ 12 The Oklahoma Flood Plain Management Act was adopted in order to mitigate against the hazards caused by flooding and to qualify citizens for coverage under the Federal flood insurance program. 82 O.S.1991, § 1602. The Federal and State programs envision land use restrictions so as to stay out of the flood prone areas absent modifications to prevent flooding and flood damage. 82 O.S.1991, § 1612. Here, Wilkerson's own engineer acknowledged that flooding could occur and that tenants of the mobile home park were at risk.

¶ 13 The Oklahoma Act further provides:
Any use that exists prior to the effective date of this act which does not meet the minimum standards set forth herein may continue. However, unless brought into compliance with the minimum standards set forth in regulations adopted pursuant to this act such uses may not be substantially altered, enlarged or added to.
82 O.S.1991, § 1613.

■ ¶ 14 The trial court accurately and concisely articulated the issue as:

The question before the Court is whether the law as relates to permitted non-conforming uses will protect the overall operation of the mobile home park so as to permit the Appellants to replace mobile homes as they vacate the park with another mobile home tenant so long as they do not add new spaces, or is the permitted non-conforming use dealt with on an individual unit basis so that when a particular mobile home is moved, then that particular space loses it (sic) protected status and another mobile home cannot be moved into that space. Obviously, the former would significantly increase the protection of the economic investment of the owners of the park but would significantly delay the elimination of the non-conforming use, whereas the latter application would have the opposite effect.

Following that statement, the trial court correctly ruled that the Ordinances should not be construed so as to permit an indefinite continuation of nonconforming uses, particularly in light of the person and property hazards here involved. Thus, public policy calls for the elimination of nonconforming uses as expeditiously as possible. *Kelly Supply Co., Inc. v. City of Anchorage,* 516 P.2d 1206 (Alaska 1973); *Frost v. Lucey,* 231 A.2d 441 (Me.1967); *Asia v. City of Seattle,* 4 Wash.App. 530, 482 P.2d 810 (1971).

The spirit of the zoning ordinances and regulations is to restrict rather than to increase any nonconforming uses, and to secure their gradual elimination. Accordingly, provisions of a zoning regulation for the continuation of such uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed. The right to continue a nonconforming use is not a perpetual easement to make a use of one's property detrimental to his neighbors and forbidden to them, and nonconforming uses will not be permitted to multiply when they are harmful or improper.... Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zon-

ing is to abolish nonconforming uses as speedily as justice will permit.

*Gagne v. Inhabitants of City of Lewiston,* 281 A.2d 579, 581 (Me.1971).

¶ 15 Nevertheless, Wilkerson further urges that City's actions here violate Article 5, Sections 52 and 54 of the Oklahoma Constitution because the interpretation of the Ordinances operates to deprive Wilkerson of a vested right. A "vested right" is the power to do certain actions or possess certain things lawfully, and is substantially a property right. Once created it is protected from legislative invasion, except by Due Process of Law. *See Ricks Exploration v. Oklahoma Water Resources Board,* 1984 OK 73, ¶ 12, 695 P.2d 498, 504; *Oklahoma Water Resources Board v. Central Okla. M.C. Dist.,* 1968 OK 73, ¶ 23, 464 P.2d 748, 755.

¶ 16 Wilkerson's reliance upon *Ricks* and *Oklahoma Water Resources Board* is misplaced. The Court held in *Ricks,* that Ricks possessed ownership rights to groundwater as an oil and gas lessee. However, the Board had prohibited Ricks from claiming a permit for groundwater because Ricks was not a surface owner. The Board's action violated Sections 52 and 54 because its action served to prevent Ricks from asserting a claim, which was a vested claim.

¶ 17 Here, the City's Ordinances are not preventing Wilkerson from any similar acts as in *Ricks.* The issue involves zoning and implicates the Taking Clauses of the Due Process provisions of our Constitutions. However, the Oklahoma Supreme Court has held that "a valid enactment of a flood plain ordinance is not per se a taking," because "acts done in the proper exercise of the police power which merely impair the use (or value) of property do not constitute a 'taking'." Continuing, the Court held that:

"The test of whether there can be a recovery in inverse condemnation is whether there is a sufficient interference with the landowner's use and enjoyment to constitute a taking. More importantly, we acknowledged governmental land-use regulations may amount to an actual or de facto taking—(i)f there is an overt act by the governmental agency resulting in an asser-

tion of dominion and control over property."

*April v. City of Broken Arrow,* 1989 OK 70, ¶ 14, 775 P.2d 1347, 1351.

¶ 18 Zoning is the process a community employs to legally control the use which may be made of property, not the ownership thereof, and the physical configuration of development upon the land located within its jurisdiction. *Enterprise Partners v. County of Perkins,* 260 Neb. 650, 619 N.W.2d 464, 468 (2000); *Family Golf of Nashville, Inc. v. The Metropolitan Government of Nashville,* 964 S.W.2d 254, 258 (Tenn.App.1997); *Ford v. Board of County Commissioners of Converse Co.,* 924 P.2d 91 (Wyo.1996). Zoning is concerned with the use of the property and zoning laws control the immediate use of the property. *Chilili Cooperative Ass'n v. Sundance Mountain Ranches, Inc.,* 107 N.M. 192, 754 P.2d 1211 (1988); *Cheyenne Airport Bd. v. Rogers,* 707 P.2d 717 (Wyo.1985).

¶ 19 Flood zoning ordinances are valid exercises of the police power. *April v. City of Broken Arrow,* 1989 OK 70, 775 P.2d 1347. There the Court, dealing with the City of Broken Arrow's ordinances, held:

In balancing the private and public interests herein, Owner's potential use of all property, under our system of government, is subordinate to the right of City's reasonable regulations, ordinances, and all similar laws that are clearly necessary and bear a rational relation to preserving the health, safety, and general welfare of the residents of Broken Arrow.

. . . .

Accepting as we must the general proposition that local public officials must be afforded reasonable "elasticity" in planning and implementing legitimate land-use interests, and given the "particular facts" of this case; we hold such limitations substantially advance City's legitimate goals of; one, reducing risks of loss of life and property; two, protecting the public's interest in health; three, preserving the aesthetic environment and fiscal integrity of Haikey's flood prone areas; four, enabling landowners to develop their proper-

ty located within the flood plain, as well as allowing landowners to purchase federally-sponsored flood hazard insurance to protect their investments.

*April v. City of Broken Arrow*, 1989 OK 70 at ¶ 19, 25, 775 P.2d at 1352–54.

¶ 20 Moreover, this matter involves a nonconforming use, which as noted above is subject to elimination not preservation. A nonconforming use is one that is impermissible under the zoning code but that is allowed because the use existed lawfully before the restrictions took effect. Black's Law Dictionary, 7th Ed. (West Group 1999). In general, nonconforming uses fall into four categories. Hagman, *Urban Planning & Land Development Control Law*, §§ 80–86 (West Pub. Co.1971). The categories are: (1) nonconforming buildings; (2) conforming uses of nonconforming buildings; (3) nonconforming uses of conforming buildings; and (4) nonconforming uses of land. *Id.*

¶ 21 Wilkerson's argument focuses upon category number 4 above. The contention was that it is the nonconforming land use which is continuing. However, there is no showing that he is using land zoned, for example, residential use for an industrial use.

¶ 22 Wilkerson's "vested right" consisted of a continual nonconforming use of an existing mobile home park. Wilkerson did not have a "vested right" to replace trailers or install new ones in the mobile home park absent compliance with the Ordinances. Wilkerson seeks a nonconforming use of conforming replacement trailers, that is, the trailers themselves are not the issue but the use of them in the flood prone park and their site elevations are nonconforming. Under the facts here, involving substantial danger to person and property, coupled with the policies involved, the trial court was correct and fully justified in ruling that the requested permit should be denied. Such ruling is consistent with the provisions of 82 O.S.1991, § 1613.

### Denial of Variance

¶ 23 The City's Code lists a number of criteria that must be met before a variance can be granted. Section 5–108, Pauls Valley Code. The Code prohibits variances if such would result in any increase in flood levels during the base flood discharge and continues:

(2) Variances shall only be issued upon, (i) showing a good and sufficient cause; (ii) a determination that failure to grant the variance would result in exceptional hardship to the applicant; and (iii) a determination that the granting of a variance will not result in increased flood heights, additional threats to the public safety, extraordinary public expense, create nuisances, cause fraud or victimize the public, or conflict with local laws or ordinances.

Section 5–108(h), Pauls Valley Code.

¶ 24 The Oklahoma statute provides specific criteria for grant of a variance and vests the governing authority with substantial discretion in the matter. 82 O.S.1991, § 1615. According to Section 1615, Wilkerson had to submit proof that:

—Compliance with the City's regulation will result in an arbitrary and unreasonable taking of property without sufficient benefit or advantage to the people.

—The continuance of the condition would not unreasonably create flood hazards.

—The equities in favor of Wilkerson outweigh the equities in favor of the public at large and the advantages and disadvantages weigh in favor of Wilkerson rather than the public at large.

¶ 25 In addition, Wilkerson was required to demonstrate that the new or replaced mobile homes and floodplain uses would not be "unreasonably hazardous to the public" or unduly restrict "the capacity of the floodway to carry and discharge the regional flood." 82 O.S.1991, § 1617.

¶ 26 The minutes of the governing body do not specify in detail the evidence and presentation given but do recite that the parties made their presentations. No transcript of any oral presentation was provided to the trial court and no additional evidence was submitted to the trial court except that of the parties' stipulation.

¶ 27 Wilkerson's application admittedly did not meet the requirements of the Ordinances, such as for elevations. Although Wilkerson

presented evidence from an expert to justify his position, the expert also acknowledged that tenants would be at risk. He further recommended a levee be constructed at public expense.[1]

¶ 28 The record reflects that the City's participation in the Flood Insurance Program would be jeopardized, if not lost, if the variance were granted. Clearly, this threat implicates the public interest at large and the public treasury. According to the minutes of the governing body hearing the variance request, that body weighed the financial advantages and disadvantages to Wilkerson as well as the physical facts concerning Wilkerson's ability to comply with the Ordinances.

¶ 29 The discretion of the trial court, and that of the governing body hearing the case in the first instance, must be exercised within the bounds of sound equitable principles, in the context of the applicable statutes, and in consideration of all the facts and circumstances. Wilkerson must establish that the decisions below constituted a clearly erroneous conclusion and judgment, against reason and evidence, in order to demonstrate an abuse of discretion. *See Green Bay Packaging, Inc. v. Preferred Packaging, Inc.,* 1996 OK 121, ¶ 32, 932 P.2d 1091, 1097. This he failed to do.

¶ 30 Based upon the record before this Court and the stipulations of the parties, Wilkerson has failed to demonstrate that the denial of the request for a variance was an abuse of discretion, or contrary to law, or clearly against the weight of any evidence presented to the governing authority or to the trial court.

## CONCLUSION

¶ 31 The decision of the trial court is affirmed.

¶ 32 AFFIRMED.

¶ 33 STUBBLEFIELD, P.J., and TAYLOR, J., concur.

---

1. Wilkerson's own Professional Engineer stated that a condition of granting a variance would be the construction of a levee which should be built to protect the property.