2010 OK CIV APP 62

**Kenneth Richard GONZALES, Plaintiff/Appellee,**

v.

**The STATE of Oklahoma and The City of Oklahoma City, Defendants/Appellants.**

No. 106,788.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 31, 2010.

Certiorari Denied June 1, 2010.

Michael S. "Mickey" Homsey, Terry R. McMillan, Homsey & Associates, Oklahoma City, OK, for Plaintiff/Appellee Kenneth Richard Gonzales

Kenneth Jordan, Municipal Counselor and Timothy L. Weston, Matthew A. Collins, Susan D. Randall, Assistant Municipal Counselors, The City of Oklahoma City, for Defendant/Appellant The City of Oklahoma City.

Scott D. Boughton, Assistant Attorney General, Oklahoma Attorney General Litigation Section, Oklahoma City, OK, for Defendant/Appellant State of Oklahoma.

DEBORAH B. BARNES, Judge.

¶ 1 This accelerated [1] appeal is brought by the State of Oklahoma (State) and the City of Oklahoma City (City) to challenge the trial court's ruling that 11 O.S. Supp.2008 § 22–115.1,[2] a statute enacted in 2008, restricting the location of dog kennels near schools or licensed day care facilities, is unconstitutional as applied to appellee Kenneth Richard Gonzales (Gonzales). Gonzales owns an unlicensed dog kennel that is located within 2,500 feet of Villa Teresa Moore School, a school and day care facility operated by the Carmelite Sisters of St. Teresa.[3]

---

1. Rule 1.36, Okla. Sup.Ct. Rules, 12 O.S. Supp. 2004, ch. 15, app. 1.

2. Title 11 O.S. Supp.2008 § 22–115.1, provides as follows:

A. Upon the effective date of this act [June 4, 2008], no dog kennel shall be located within two thousand five hundred (2,500) feet of a public or private school or licensed day care facility in a municipality having a population of more than three hundred thousand (300,000). Provided, this prohibition shall not apply to a dog kennel that was lawfully in operation and in full compliance with all licensing, permitting and zoning requirements applicable to said kennel prior to the effective date of this act.

B. Upon the effective date of this act, no public officer or employee shall issue any type of license, permit, approval or consent for a dog kennel to be located within two thousand five hundred (2,500) feet of a public or private school or licensed day care facility in a municipality having a population of more than three hundred thousand (300,000).

C. Applications for a dog kennel license or for any governmental permit, approval or consent needed to authorize the lawful operation of a dog kennel that are pending on the effective date of this act shall be subject to the prohibitions set forth in subsections A and B of this section.

D. The provisions of subsections A and B of this section may be enforced by any public officer within whose jurisdiction a noncompliant dog kennel is located or by any other person aggrieved in any way by noncompliance with said provisions. Enforcement action may include a civil suit for an injunction filed in the district court in the county where a noncompliant dog kennel is located.

E. Any municipality is hereby authorized to enact an ordinance consistent with the provisions of this section and to enforce said ordinance by prosecution of violations in the municipal court, as provided by law.

F. For the purposes of this section, the term "dog kennel" means any place other than a federal, state or municipal facility, veterinary hospital or medical research institute, where more than four dogs beyond the age of six (6) months are kept, harbored, boarded, sheltered or bred.

3. In related litigation before this Court in Appeal No. 105,313, Villa Teresa Moore School appears as a litigant, by and through Sister Patricia Ann Miller, as Representative of the Carmelite Sisters of St. Teresa (Representative). This appeal (Oklahoma County Dist. Ct. Case No. CJ–2008–5282) is one of four appeals—two from Oklahoma County and two from Cleveland County. Appeal No. 105,313 (Oklahoma County Dist. Ct. Case No. CJ–2006–9144) is an appeal by Representative, Jim Muse, Janet Muse, Dale Bliss, Cynthia Bliss, and Glen Orr from the trial court's order, denying their motion to intervene in the matter after the trial court entered an order granting Gonzales certain zoning variances and a special zoning exception that had previously been denied by the Oklahoma City Board of Adjustment. This Court's Opinion in that case was issued on March 22, 2010. Appeal No. 106,196, from Cleveland County (Dist. Ct. Case No. CJ–2008–1236–L), is an appeal from the trial court's grant of a temporary injunction in favor of Representative and against Gonzales under 11 O.S. Supp.2008 § 22–115.1(D). That appeal was decided in this Court's Opinion, filed on February 23, 2010. The fourth case, Appeal No. 106,-771, from that same Cleveland County District Court case, is an appeal from the trial court's grant of permanent injunctive relief on behalf of Representative, after a hearing on the merits under the same statute, found by the trial court to be constitutional. This Court's Opinion in that appeal was issued on March 8, 2010.

¶2 On June 11, 2008, Gonzales filed his "Petition for Injunction, Temporary Injunction, Temporary Restraining Order, and Declaratory Relief." Gonzales noted that five days earlier, the Governor of the State of Oklahoma signed into law SB–1754, codified as 11 O.S. Supp.2008 § 22–115.1, the enforcement of which would prohibit Gonzales from operating his unlicensed dog kennel in its current location. Gonzales alleged that he had "sought" all required zoning and permits necessary to operate his kennel. As evidence of his efforts to obtain a license, Gonzales refers in his Petition to a court order, entered on August 17, 2007, in Oklahoma County District Court (Case No. CJ–2006–9144),[4] which granted him a special exception and some zoning variances under the Oklahoma City zoning code. Contrary to his assertions, however, nothing in the language of this order grants him a kennel license or even refers to kennel licensing.[5] It is undisputed that Gonzales still lacked a building permit and thus had not been successful in obtaining a kennel license prior to the passage of this new statute.[6]

¶3 After a hearing on the matter, the trial court denied in part and granted in part Gonzales's request for a temporary restraining order, by order filed on July 1, 2008, which stated, in pertinent part:

1. That as to civil litigation in either Oklahoma County or Cleveland County to attempt to enforce Title 11, Section 22–115.1, the Court denies the motion for a temporary restraining order.

2. That, with regard to the use of law enforcement by The City, however, to attempt to enforce Title 11, Section 22–115.1, a temporary restraining order is appropriate because there is little guidance in the language of the statute as to whether or not there is proper authority to take other action, other than civil litigation for its enforcement. For that reason a temporary restraining order is appropriate with regard to the use of law enforcement against [Gonzales] as a means to attempt to enforce the statute.

3. That, accordingly, until further order of this Court to the contrary, the parties have agreed that the only enforcement mechanism used by The City of Oklahoma City to attempt to enforce the statute against [Gonzales] would be civil litigation for an injunction and not closing down [Gonzales's] kennel by means of law enforcement.

4. That the Court, by this order, is not enjoining The City of Oklahoma City from enacting an ordinance as contemplated by the statute.[7]

¶4 The parties filed their respective motions for summary judgment as to Gonzales's request for a declaratory judgment and for

---

**4.** Record (R.), Tab 14, attached "Defendant's Exhibit 2." This order is the subject of Appeal No. 105,313.

**5.** Kennel licensing in Oklahoma City is under the authority of the City Treasurer, not the Zoning Board of Adjustment. *See* R., Tab 20, Exhibit 2, affidavit of Bob Ponkilla, City Treasurer for the City of Oklahoma City. Bob Ponkilla stated in his Affidavit, dated August 29, 2008, that one of his office's duties is to "oversee all licenses issued by the City of Oklahoma City, including kennel licenses." He further stated that "Kenneth Gonzales does not have a license to operate any kennel in the City of Oklahoma City" and that Gonzales "does not have a building permit on file for the dog kennel." Ponkilla stated, "Thus, Kenneth Gonzales is not in full compliance with all licensing, permitting and zoning requirements applicable to his kennel."

**6.** In fact, Gonzales admits (R., Tab 14, p. 1) that he has not obtained a permit to modify an existing restroom to meet "handicap requirements."

In a September 11, 2008, order, of the trial court in CJ–2008–1786, the trial court denied Gonzales's appeal of the denial by the Oklahoma City Board of Appeals of a requested variance to the handicap accessible restroom "requirements established by the International Building Code 2003." R., Tab 15, attached Exhibit 1. The September 11, 2008, order has not been appealed.

**7.** R., Tab 8. On June 18, 2008, Representative filed a "Motion to Intervene and a Motion to Dismiss." In this motion, Representative alleged that she was entitled to intervene as a matter of right as someone the statute was aimed at protecting because Villa Teresa Moore School was located within 2,500 feet of Gonzales's dog kennel. She also alleged that Gonzales's Petition should be dismissed as filed in Oklahoma County, instead of in Cleveland County, as set forth in 11 O.S. Supp.2008 § 22–115.1(D). Gonzales opposed the Motion. The docket sheet (R., Tab 24) indicates that on July 14, 2008, the trial court denied Representative's "Motion to Intervene" and denied, as moot, her "Motion to Dismiss."

permanent injunctive relief. On October 2, 2008, the trial court ruled [8] in favor of Gonzales, finding that because Gonzales had taken "legal actions" in pursuit of his acquisition of a kennel license, the new statute was unconstitutional as applied to him under the Oklahoma Constitution, Art. 5, § 52.[9] The trial court ordered a permanent injunction that prohibited State and City from enforcing § 22–115.1 against Gonzales. In all other respects, the trial court found the statute constitutional.

¶ 5 On October 10, 2008, City filed its "Motion to Vacate Judgment," asking that the trial court's October 2, 2008, ruling be vacated, and in the alternative, requesting a new trial. On October 17, 2008, State filed its "Motion to Vacate Judgment/Motion for New Trial." Each motion challenged the trial court's finding that 11 O.S. Supp.2008 § 22–115.1 was unconstitutional as applied to Gonzales. The trial court denied those posttrial motions in an order [10] filed on January 22, 2009, finding that the August 17, 2007, order [11] (filed in Oklahoma County District Court Case No. CJ–2006–9144), which granted certain zoning variances "gave [Gonzales] rights that are protected under the Oklahoma Constitution" and that application of the subsequently-enacted statute at issue to Gonzales would "violate Art. 5, § 52 of the Oklahoma Constitution." From the October 30, 2008, judgment in favor of Gonzales and the January 22, 2009, order, overruling the motions to vacate and/or grant a new trial, State and City appeal.

¶ 6 Based on our review of the uncontroverted material facts and the applicable law, we find the trial court's January 22, 2009, order, denying City's and State's motions to vacate/motions for new trial should be reversed, and we vacate the trial court's grant of summary judgment to Gonzales as contrary to law. We remand this case to the trial court with instructions to dismiss.

## MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS

¶ 7 1. Gonzales operates a dog[12] kennel within the city limits of Oklahoma City, Oklahoma, within Cleveland County, Oklahoma.[13]

2. Oklahoma City is a municipality with a population of more than three hundred thousand (300,000).[14]

3. Gonzales has 25 dogs in his dog kennel.[15]

4. Gonzales's dog kennel is located within 2,500 feet of Villa Teresa Moore School, a school and day care operated by Representative.[16]

5. For the purpose of qualifying for a kennel license, Gonzales initiated his building permit application process in April, 2006 and his zoning variance application process in 2005,[17] but had not received a building permit, and thus had no kennel license, prior to the enactment of 11 O.S. Supp.2008 § 22–

8. The journal entry of judgment was filed on October 30, 2008. R., Tab 19.

9. This section of the Oklahoma Constitution provides: "The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this State. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

10. R., Tab 23.

11. R., Tab 14, attached "Defendant's Exhibit 2."

12. Gonzales breeds, raises, and shows internationally-recognized, champion registered American pit bull terriers (American Staffordshire terriers). R., Tab 10, at pp. 3–4, and attached "Plaintiff's Exhibit 4," pp. 89–97. Although

there is considerable conflicting information in the record regarding the nature of the breed in general and Gonzales's dogs in particular, including unchallenged assertions that none of Gonzales's dogs has ever attacked or bitten any adult or child, none of these facts is material to our consideration of the statute at issue.

13. R., Tab 9, attached as "Plaintiff's Exhibit 2."

14. The parties do not dispute that Oklahoma City is a municipality with a population in excess of 300,000.

15. Transcript (Tr.) of Gonzales's testimony, R., Tab 10, attached as "Plaintiff's Exhibit 4," p. 55.

16. R., Tab 1, p. 2.

17. R., Tab 12, p. 2.

115.1.[18]

## STANDARD OF REVIEW

¶ 8 Our standard of review for this appeal is as follows:

Summary process—a special pretrial procedural track pursued with the aid of acceptable probative substitutes—is a search for undisputed material facts which, *sans* forensic combat, may be utilized in the judicial decision-making process. Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense. Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for *nisi prius* resort to summary process for a claim's adjudication.

Summary relief issues stand before us for *de novo* review. All facts and inferences must be viewed in the light most favorable to the non-movant. Appellate tribunals bear the same affirmative duty as is borne by *nisi prius* courts to test for legal sufficiency all evidentiary material received in summary process in support of the relief sought by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor. . . .

*Reeds v. Walker*, 2006 OK 43, ¶¶ 8–9, 157 P.3d 100, 106. (Footnotes omitted.) *See also* Rule 13, Rules for District Courts of Oklahoma, 12 O.S. Supp.2002, ch. 2, app.

 ¶ 9 Both State's "Motion to Vacate Judgment/Motion for New Trial" and City's "Motion to Vacate Judgment," asking, in the alternative, for a new trial, were filed before the filing of the judgment on October 30, 2008, and are thus deemed to be filed within 10 days of that judgment. Because the motions seek reconsideration of a prior ruling, we treat both of them as motions for new trial. "A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment or final order, which is filed within 10 days of the day such decision was rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title." *Horizons, Inc. v. Keo Leasing Co.*, 1984 OK 24, ¶ 4, 681 P.2d 757, 758–759. (Footnote omitted.)

A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Where as here, our assessment of the trial court's exercise of discretion in denying defendants a new trial rests on the propriety of the underlying grant of summary judgment, the abuse-of-discretion question is settled by our *de novo* review of the summary adjudication's correctness. Judicial discretion is abused when a trial court errs with respect to a pure, unmixed question of law.

*Reeds v. Walker* at ¶ 9, 157 P.3d at 106–107. (Footnotes omitted.)

 ¶ 10 An appellate court "will not disturb an order which grants or refuses an injunction unless there is a showing the trial court abused its discretion or that the judgment is clearly against the weight of the evidence or contrary to law." *House of Sight & Sound, Inc. v. Faulkner*, 1995 OK CIV APP 112, ¶ 5, 912 P.2d 357, 360, citing *Sharp v. 251st Street Landfill, Inc.*, 1991 OK 41, 810 P.2d 1270. The trial court's judgment raises an issue of law and is thus reviewable "under a *de novo* standard." *Cherokee Nation v. Nomura*, 2007 OK 40, ¶ 11, 160 P.3d 967, 972.

## ANALYSIS

¶ 11 The issues raised on appeal by State and City, are as follows:

1. The trial court incorrectly found that the August 17, 2007, order filed in the Oklahoma County District Court Case No. CJ–2006–9144 granted Gonzales a vested right to operate his kennel despite his failure to obtain requisite building permits and a kennel license prior to the enactment of 11 O.S. Supp.2008 § 22–115.1.

2. The trial court incorrectly ruled that 11 O.S. Supp.2008 § 22–115.1 was unconstitutional as applied to Gonzales because

**18.** R., Tab 15, p. 1; Tab 13, attached as Exhibit 2.

the August 17, 2007, order filed in Oklahoma County District Court Case No. CJ–2006–9144, involved Board of Adjustment and Board of Appeal proceedings which are not "special proceedings" to which Art. 5, § 52 applies.

3. The trial court should have denied Gonzales's motion for summary judgment and granted State's and City's motions for summary judgment for the reason that 11 O.S. Supp.2008 § 22–115.1 is neither an ex post facto law nor a bill of attainder and is a constitutional statute, rationally related to a legitimate government interest.

### I. Standing is Required to Bring a Constitutional Challenge

¶ 12 Standing, which refers to a person's legal right to seek relief in a judicial forum, *"may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte."* Hendrick v. Walters, 1993 OK 162, ¶ 4, 865 P.2d 1232, 1236. (Footnote omitted.) An initial inquiry must reveal that: (1) an actual or threatened injury has occurred; (2) some relief for the harm can be given; and (3) the interest to be guarded is within a statutorily or constitutionally protected zone. *State of Oklahoma ex rel. Board of Regents v. McCloskey Brothers*, 2009 OK 90, 227 P.3d 133; *Hendrick v. Walters*, 1993 OK 162, 865 P.2d 1232; *State of Oklahoma ex rel. Cartwright v. Oklahoma Tax Commission*, 1982 OK 146, 653 P.2d 1230; *Independent School District No. 9 of Tulsa County v. Glass*, 1982 OK 2, 639 P.2d 1233. "When standing of a party is brought into issue, the focus is on the party seeking to get the complaint [here, the alleged unconstitutionality of 11 O.S. Supp.2008 § 22–115.1] before the court, and not on the issues the party wishes to have adjudicated." *State of Oklahoma ex rel. Board of Regents v. McCloskey Brothers*, 2009 OK 90 at ¶ 18, 227 P.3d 133. The question to be answered is whether the person bringing the constitutional challenge is a proper party to request adjudication of that issue and not whether the issue itself is justiciable.[19] The "inquiry

posed is whether the party … has a legally cognizable interest…." *Democratic Party of Oklahoma v. Estep*, 1982 OK 106, ¶ 7, 652 P.2d 271, 274.

### II. Gonzales Has No Legally Cognizable Interest

¶ 13 To invoke a constitutional analysis of an act of the Legislature—here, 11 O.S. Supp.2008 § 22–115.1—this Court must be presented with a proper case in which the person complaining about the statute has been, or is about to be "denied some right or privilege to which he was *lawfully entitled* …." *City of Shawnee v. Taylor*, 1943 OK 11, ¶ 4, 191 Okla. 687, 132 P.2d 950, 952, quoting *Shinn v. Oklahoma City*, 1939 OK 29, 184 Okla. 236, 87 P.2d 136. (Emphasis added.) "In other words as a general rule the courts decide questions only when those urging them have *an interest to protect*…." *Id.* (Emphasis added.)

¶ 14 Gonzales has never operated his kennel in compliance with the kennel licensing laws. Although he applied for a license and took steps to satisfy licensing requirements prior to the enactment of § 22–115.1, the fact is he was never issued a kennel license.[20] Having no license to operate his dog kennel, Gonzales cannot now successfully argue that § 22–115.1 operates to deny him a right or privilege cloaked with constitutional protection. Although Gonzales argues that the statute operates to deprive him of his property, all that he has lost is the ability *to continue using* his property, *in a noncompliant, unlicensed manner.* Gonzales cites no law, and indeed, we have not found any, that finds that type of loss to be a type that triggers a constitutional analysis.

¶ 15 Gonzales's circumstances differ from those in *State of Oklahoma ex rel. Board of Examiners in Optometry v. Lawton*, 1974 OK 69, 523 P.2d 1064. In that declaratory judgment lawsuit brought by Lawton, a licensed optometrist, Lawton had been practicing optometry in a leased shopping center

---

**19.** *Flast v. Cohen*, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

**20.** If Gonzales had been operating his kennel with a license, he would have been "grandfathered" in under § 22–115.1(A) and would have been allowed to continue his lawful operation.

office since 1965. That same year, a retail optical outlet leased space in the same building on the opposite side of the hall from Lawton. In 1971, the Legislature passed a bill (59 O.S.1971 § 594) which prohibited any optometrist from practicing "adjacent to or in such geographical proximity to a retail optical outlet." Lawton filed his declaratory judgment lawsuit, claiming the Board of Examiners in Optometry were about to take action against him for violation of the new law. The trial court and the Oklahoma Supreme Court rejected the Board's argument that the controversy was "hypothetical." A declaratory judgment action is meant to ascertain uncertain rights and can be used before any actual breach. "The fact that Lawton could be subjected to criminal prosecution and *lose his license* if he were found to be in violation of the statute certainly renders it a matter of justiciable controversy." *Id.* at ¶ 9, 523 P.2d at 1066.[21] (Emphasis added.)

 ¶ 16 In this case, however, there is no uncertainty as to Gonzales's rights. He has none. He is not threatened with losing his license. He is not threatened with losing his ability to operate his kennel lawfully because he has never operated his kennel in compliance with the licensing laws. Gonzales has not suffered an injury to a legally protected interest as contemplated by constitutional provisions. "Standing to prosecute an appeal must be predicated on that interest in the trial court's decision which is *direct, immediate and substantial.* Conjecture or

speculation … will not suffice…." *Creamer v. Bucy,* 1985 OK CIV APP 19, ¶ 4, 700 P.2d 668, 670, quoting *Underside v. Lathrop,* 1982 OK 57, 645 P.2d 514. Because he had no license, Gonzales has not established that the legislation sought to be invalidated detrimentally affects his interest in a direct, immediate and substantial manner. He was operating a noncompliant kennel the day before the enactment of § 22–115.1, as well as the day after.

### III. The August 17, 2007, Order Created No Vested Right in Operating a Kennel

 ¶ 17 Gonzales argues, and the trial court concluded, that the August 17, 2007, order, entered in the Oklahoma County District Court case, CJ–2006–9144 [22] (the subject of Appeal No. 105,313), created in him a vested right—a right worthy of constitutional protection—in a kennel license. Gonzales asserts that § 22–115.1 is unconstitutional as applied to him because he has had to "seek court redress for all permit and licensing issues" [23] and that these legal actions, taken in furtherance of his acquisition of a kennel license, appear to him like a series of "hoops" through which he must "jump." Despite this complaint, the fact is, as expressed by his counsel, that issuance of a kennel license depends upon satisfying the building code portion of the application, as well as the zoning ordinance compliance portion of the application.[24] Gonzales argued in the district court:

21. In *Lawton,* the language of the new law was found to be unconstitutionally vague such that people of common intelligence would have to guess at the meaning of "geographical proximity." An injunction issued, prohibiting the Board from enforcing the statute.

22. R., Tab 14, attached "Defendant's Exhibit 2." This case was filed in the Oklahoma County District Court by Gonzales to appeal from the Oklahoma City Board of Adjustment's decision denying requested municipal code variances regarding, for example, parking spaces, curbing, driveway dimensions and a special zoning exception. The Oklahoma County District Court entered the August 17, 2007, order as part of the settlement of Gonzales's appeal to the District Court from the Board of Adjustment's denial.

23. Gonzales's "Response to Petition in Error," filed on February 11, 2009, in his Statement of the Case.

24. Indeed, in Gonzales's Petition for Injunction, Temporary Injunction, Temporary Restraining Order, and Declaratory Relief, he states that he "was advised that building permits were needed before the issuance of the kennel license." R., Tab 1, p. 3. Section C of 11 O.S. Supp.2008 § 22–115.1 provides specifically for Gonzales's situation of having a pending application for kennel licensure at the time of the law's enactment: "Applications for a dog kennel license *or for any* governmental permit, approval or consent needed to authorize the lawful operation of a dog kennel *that are pending* on the effective date of this act shall be subject to [its] prohibitions…." (Emphasis added.) See also R., Tab 15, pp. 1–2 of "City of Oklahoma City's Response

As the Court is well aware we have been before this Court against the Board of Adjustmen[t]. We had settled the matter in August of 2007. We have since that time been attempting to obtain a permit and going through the different hoops that you have to jump through regarding [b]uilding permits, building codes, et cetera.

As far as the zoning goes we have—we believe we're permitted. . . . We followed as to the letter of the law this ruling that the Court entered in August of '07. . . .

The one argument that we've had with the City is whether or not we were to have a handicap bathroom. . . . We ended up getting denied a handicap bathroom or denied a variance on it. . . . [I]f we put in a handicap bathroom we'll go get the permit. . . .[25]

¶ 18 In Gonzales's Supplemental Brief in Support of Motion for Summary Judgment,[26] he acknowledges that the "process" of obtaining the permits and kennel license, is still "ongoing." He argues that because he has "taken all legal steps required to obtain the permits and license necessary for his private kennel," [27] he has "a vested interest/property right," to receive "the required permits and license." [28]

¶ 19 We reject the notion that the August 17, 2007, order created a vested right *in a kennel license* or any right of Gonzales to operate his kennel without a license. The August 17, 2007, order does not create a vested right or a basis for standing. The trial court erred as a matter of law in so finding.

¶ 20 The August 17, 2007, order,[29] states, in pertinent part, as follows:

IT IS THEREFORE ORDERED, AD-JUDGED AND DECREED that this cause is hereby settled in accordance with the agreement of the parties.

IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that [Gonzales's] application for a **Special Exception** . . . to . . . Chapter 59 [30] of the Oklahoma City Municipal Code, 2002, for "Animal Sales and Services Kennels and Veterinary General" in the AA [Agricultural] District . . . be **granted** by this Court.

IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the prohibition of a freestanding dwelling on the same lot with any other principal use be **granted** by this Court.

IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required number of on-site parking spaces be **granted** by this Court.

IT IS FURTHER ORDERED, AD-JUDGED AND DECREED that [Gonzales's] application for a variance . . . to . . . Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the parking and striping standards and required curbs be **granted** by this Court.

1 to Tab 15. This order was entered in Oklahoma County District Court Case CJ–2008–1786, not on appeal before this Court.

to Plaintiff's Motion for Writ of Mandamus," in which City states that on "April 21, 2006, Plaintiff applied for a building permit for a dog kennel and was given a list of requirements from City's public works department staff outlining the specific items that needed to be complied with (including handicapped accessible restrooms and access) before a building permit could be issued." Gonzales had filed a Writ of Mandamus, asking that City be commanded to issue a building permit (without handicap-compliant restrooms) and to issue his kennel license. R., Tab 14. Gonzales's initial building permit was denied because it did not meet handicap restroom requirements under the International Building Code 2003. R., Tab 15, p. 5, and the order denying Gonzales's appeal of the denial of the handicap restroom variance, attached as Exhibit

**25.** Tab 25, Tr., June 12, 2008, at pp. 4–5.

**26.** R., Tab 12, p. 2.

**27.** *Id.*

**28.** *Id.*, p. 3.

**29.** R., Tab 14, attached "Defendant's Exhibit 2."

**30.** Chapter 59 of the Oklahoma City Municipal Code is that city's real property zoning code.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance ... to ... Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required handicap spaces be **granted** by this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance ... to ... Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required 22 foot two-way drive aisle leading to a parking area be **granted** by this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Gonzales's] application for a variance ... to ... Chapter 59 of the Oklahoma City Municipal Code, 2002, concerning the required 10 foot driveway radius be **granted** by this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court directs [Gonzales] to take the following action:

1. [Gonzales] shall keep no more than 25 dogs on the property.

2. [Gonzales] shall not allow any dogs outside of the enclosed kennel between 7 p.m. and 7 a.m.

3. [Gonzales] shall completely enclose the entire property where the dogs are kept with an 8 ft. cedar fence, and consistently maintain the fence.

4. [Gonzales] may sell no dogs on the premises of the property.

5. [Gonzales] shall install a concrete footer along the entire perimeter of the 8 ft. cedar stockade fence in the event a dog escapes from the property.

¶ 21 Contrary to the trial court's findings and Gonzales's assertions, the August 17, 2007, order, dealing simply with zoning ordinances and not kennel licensure, did not find that Gonzales is entitled to a license for his kennel nor grant such a license. The August 17, 2007, order granted Gonzales's application for variances and a special exception to City's Zoning and Planning Code ordinances in Chapter 59 of the Oklahoma City Municipal Code. It does not command City to issue a kennel license to Gonzales. All that the August 17, 2007, order does is establish Gonzales's right to have his dwelling, parking spaces, striping, curbs, handicap parking spaces, drive aisle and driveway radius be as they are and be consistent with, and allowed by, the zoning ordinances.

¶ 22 "A 'vested right' is the power to do certain actions or possess certain things *lawfully....*" *Wilkerson v. City of Pauls Valley, Oklahoma,* 2001 OK CIV APP 66, ¶ 15, 24 P.3d 872, 876. (Emphasis added.) In *Wilkerson,* the plaintiff, who operated a mobile home park, appealed a zoning commission decision denying the plaintiff a variance from a new flood prevention ordinance. The plaintiff claimed the ordinance was unconstitutional because it deprived him of a vested right, which would be protected from legislative invasion, except by due process of law. The Oklahoma Court of Civil Appeals rejected that argument, noting that the plaintiff had no "vested right" of continual nonconformance. Gonzales, like the plaintiff in *Wilkerson,* simply has no vested right,[31] nor any right at all, to continue oper-

---

**31.** A license is the "permission by competent authority to do an act which, without such permission, would be illegal...." *Black's Law Dictionary* 829 (5th ed.1979). "A license gives to the licensee a special privilege not accorded to others and which the licensee otherwise would not enjoy." *Priddy v. City of Tulsa,* 1994 OK CR 63, ¶ 8, 882 P.2d 81, 83. *See Carl v. State of Oklahoma ex rel. Department of Public Safety,* 1995 OK CIV APP 147, 909 P.2d 1196 (driver has no "vested right" to issuance of driver's license and thus no constitutional right to modification of an order revoking that privilege), citing *Robertson v. State of Oklahoma ex rel. Lester,* 1972 OK 126, 501 P.2d 1099; *Brown Distributing Co., Inc. v. Oklahoma Alcoholic Beverage Control Board,* 1979 OK 101, 597 P.2d 324 (no vested property right in liquor store license and no constitutional protection); *Fernhoff v. Tahoe Regional Planning Agency,* 622 F.Supp. 121 (D.C.Nev.1985) (land developer who never had a building permit never had a vested right against any zoning changes that might restrict the development of his land); *Hannifin v. Morton,* 444 F.2d 200 (C.A.N.M.1971) (person who had applied for issuance of mineral prospecting permits prior to promulgation of regulation imposing 25 cents per acre rental as a condition of permit issuance had not acquired any vested right under the Constitution protecting him from that payment); *Schraier v. Hickel,* 419 F.2d 663 (C.A.D.C. 1969)(the filing of an application for an oil and

ating his kennel without a license.[32]

¶ 23 In *In re McDonald's Corporation*, 146 Vt. 380, 505 A.2d 1202 (1985), McDonald's was interested in purchasing certain real property. Before buying it, McDonald's obtained a governmental environmental advisory opinion that a certain commercial permit was not required on the land McDonald's was seeking to purchase for construction of a restaurant. After McDonald's purchased the property, the neighbors filed a petition for a declaratory judgment, contending the permit was, indeed, necessary. While the litigation regarding the necessity of the permit went forward, McDonald's built its restaurant and operated it.

¶ 24 When the litigation completed, it was adjudged that McDonald's needed the permit. The Vermont Supreme Court rejected McDonald's estoppel argument because McDonald's knew the question of the permit was unsettled and in litigation when it decided to go forward and build the restaurant. The appellate court also rejected McDonald's vested rights argument, stating that McDonald's went forward at its own risk. Any "construction commenced by the developer prior to issuance of all the necessary permits and prior to a final judicial determination … is commenced at his peril." [33] The court

further stated that "[l]ong ago Justice Holmes remarked: 'Men must turn square corners when they deal with the Government.'" *Id.* (quoting *Rock Island, Arkansas & Louisiana R.R. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920)). "We find no departure from rectangular rectitude in this case." [34]

### IV. Gonzales Had Not Satisfied All Kennel License Requirements

¶ 25 The August 17, 2007, order establishes Gonzales's compliance with the zoning requirements, which is just one area of compliance that is prerequisite to being qualified to receive a kennel license. The order does not grant a kennel license, order issuance of one, or state, contrary to Gonzales's assertions, that he "was eligible" for one.[35] When § 22–115.1 was enacted, Gonzales was merely in the process of obtaining prerequisites for kennel licensure—zoning approval and building permits.[36] That he obtained his zoning variances set forth in the August 17, 2007, order, is simply completion of one step toward kennel licensure.

¶ 26 City admits, and indeed the record shows, that by reason of the August 17, 2007, order, Gonzales obtained *zoning* approval [37]

---

gas lease that has not been granted is an "expectation" only and it does not give any right to a lease, nor create a legal interest).

**32.** "Property in dogs is of an imperfect or qualified nature and they may be subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right." *McNeely v. United States*, 874 A.2d 371, 381 (D.C.2005), quoting *Nicchia v. People of State of New York*, 254 U.S. 228, 41 S.Ct. 103, 65 L.Ed. 235 (1920), and finding the dog owner lacked standing to bring a constitutional claim. In fact, use of one's property to operate a *licensed* kennel can be constitutionally limited. In *City of La Marque v. Braskey*, 216 S.W.3d 861 (Ct.App.Texas 2007), the landowner who operated a *state-licensed* cat shelter sought injunctive relief along with a declaratory judgment that the city's kennel location ordinance did not apply to her. The Texas Court of Appeals vacated and dismissed the appeal because the ordinance's restrictions on the landowner's use of her property as a cat shelter did not constitute a threat to a vested property right and thus the trial court did not have jurisdiction to hear the landowner's lawsuit. The court found that the law, prohibiting a kennel within 500 feet of a dwelling, school or

church, only affected the way the landowner *used* her property, which was not an absolute right or a constitutionally protected right. The court did not reach the issue of the constitutionality of the penal ordinance itself. *See also Miller v. City of Arcadia*, 121 Cal.App. 660, 9 P.2d 587 (1932), wherein the trial court, affirmed on appeal, upheld the constitutionality of an ordinance limiting the number of dogs that could be kept within 250 feet of any human dwelling house, the result of which was to shut down the use of the property as a kennel.

**33.** *See Preseault v. Wheel*, 132 Vt. 247, 315 A.2d 244 (1974).

**34.** *See In re McDonald's Corporation*, at 1205.

**35.** R., Tab 21, Transcript of October 2, 2008, hearing, p. 8, line 9.

**36.** Transcript of Proceedings of Temporary Restraining Order, June 12, 2008, at pp. 4–5.

**37.** The enactment of 11 O.S. Supp.2008 § 22–115.1 did not invalidate that zoning approval order.

of the kennel. However, that order did not grant a *building permit* or any exceptions to building permit requirements. Nor did the order make any findings or rulings regarding compliance with building permit requirements or address the issuance or entitlement to a kennel license. In fact, the Board of Adjustment has no power to exempt anyone from complying with City's building code[38] or to grant a kennel license.[39]

■ ¶ 27 No constitutionally-protected vested right arises from one's merely being in pursuit of a license and engaging in an effort to satisfy all applicable requirements for licensure. Because Gonzales had no vested right to operate his kennel without a license, he has failed to establish his standing to challenge the constitutionality of the statute. Therefore, we need not take the analysis any further to reach the issue of whether the enactment of the statute violated Art. 5, § 52 of the Oklahoma Constitution[40] or any other provision of the Constitution.[41]

■ ¶ 28 "This court will not pass upon the constitutionality of an act of the Legislature, nor of any of its provisions, until there is presented a proper case in which it is made to appear that the person complaining by reason thereof has been or is about to be denied some right or privilege *to which he was lawfully entitled ....*" *Rath v. Maness,* 1970 OK 111, ¶ 19, 470 P.2d 1011, 1014. (Emphasis added.) We, therefore, decline to address whether the statute is, in fact, con-

stitutional and further find that it was error for the trial court to make any findings as to the constitutionality of the statute at issue.

## CONCLUSION

¶ 29 Based on our review of the uncontroverted material facts and the applicable law, we find Gonzales lacked standing to challenge the constitutionality of 11 O.S. Supp. 2008 § 22–115.1. The trial court's denial of City's and State's motions to vacate/motions for new trial was erroneous; therefore, we reverse the trial court's January 22, 2008, order and vacate the trial court's October 30, 2008, judgment. We remand with instructions to dismiss this case.

¶ 30 **REVERSED, VACATED, AND REMANDED WITH INSTRUCTIONS TO DISMISS.**

WISEMAN, C.J., and FISCHER, P.J., concur.

---

38. The Public Works Department is the enforcing agency for building permits under the City's Municipal Code. R., Tab 16, attached as Exhibit 1, at pp. 5 and 9.

39. Gonzales also argues that § 22–115.1 amends or destroys his rights under the August 17, 2007, order and thus violates Art. 5, § 52 of the Oklahoma Constitution. The right Gonzales has pursuant to that order is the right to have his current property configuration meet with zoning regulations. Nothing in the language of § 22–115.1 voids, much less mentions or refers to, the granted zoning variances. The trial court erroneously interpreted the August 17, 2007, order as granting a right to something other than zoning variances.

40. Gonzales cites *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy District,* 1968 OK 73, ¶ 23, 464 P.2d 748, 755, in support of this assertion. That case sets forth the definition of "vested right" as "the power to do certain actions or possess certain things *lawfully,* and is substantially a property right. It may be created either by common law, by statute or by contract. Once created, it becomes absolute, and is protected from legislative invasion by Art. 5, Secs. 52 and 54 of our Constitution." (Emphasis added and citations omitted.)

41. Nor does this Court make any determination as to whether actual possession of a kennel license would be a "vested right" subject to constitutional protection.